IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KAREN TRAVIS and<br>KEN L. TRAVIS,<br><br>Plaintiffs,<br><br>THANE INTERNATIONAL, INC.,<br>d/b/a/ THANE FITNESS and JOHN<br>ABDO, using trad names of J.A.<br>FITNESS, INC., and AB-DOer, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)   NO: 3:02-1030<br>)   JUDGE HAYNES<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

Plaintiffs, Karen Travis and Ken L. Travis, Tennessee citizens, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants: Thane International, Inc. d/b/a Thane Fitness, a Delaware corporation and John Abdo, using trade names of JA Fitness, Inc., and AB-DOer, LLC, California citizens. Plaintiffs assert claims that the Defendants' product, the AB-DOer is a defective product that caused injuries to Plaintiff Karen Travis, resulting in surgery.

Before the Court are the Defendants' motion for summary judgment (Docket Entry Nos. 56 and 76) and the Plaintiffs' motion to strike an expert affidavit. (Docket Entry No. 59). Of the two motions, the Court addresses first Plaintiffs' motion to strike.

### A. Plaintiffs' Motion to Strike

In this motion, Plaintiff challenges the affidavit of Dr. Melvin D. Law, her former treating physician who in an affidavit submitted by Defendants, opines that the AB-DOer is not a defective product and did not cause Plaintiff Karen Travis's injuries. (Docket Entry No. 77,

Exhibit B thereto). Plaintiff, Karen Travis's challenges Law's affidavit as based upon an <u>ex parte</u> and impermissible interview with defense counsel that is contrary to Tennessee law.

The Defendants respond with copies of medical authorizations signed by Karen Travis and stating in relevant part, that she "authorize[d]" her health care providers to disclose to the Defendant's insurer and its representative "any and all information you may have concerning my injury or illnesses." (Docket Entry No. 71, McCune Affidavit, Exhibits A and C thereto). There responses are dated June 21, 2002, and January 29, 2003. The Defendants' insurer sent these documents to Defendants counsel. <u>Id.</u>

On September 13, 2003, to comply with the Health Insurance Portability and Accountability Act of 1996, 110 Stat. 1936 (1996) and its regulations 45 C.F.R. 164.501 <u>et seq</u>, Karen Travis signed a "medical records authorization "for the Defendants' counsel's firm, dated September 13, 2003. Defendants' counsel also submitted his September 9, 2004 letter to Plaintiffs' counsel from his paralegal that he "would like to take an initial statement from Ms. Travis's physicians who specifically treated her back injury with respect to this action." <u>Id.</u> at Exhibit D. Without the presence of Plaintiffs' counsel, Defendants' counsel met with Dr. Law on July 21, 2004 and based on that interview, Law gave his affidavit.

In an affidavit, Karen Travis disputes that the forms that she signed did not authorize defense counsel's contact with her physician. (Docket Entry No. 61).

In <u>Givens v. Mullikin</u>, 75 S.W.3d 383 (Tenn. 2002), the Tennessee Supreme Court recognized an implied condition of confidentiality between patient and physician.

> [W]e now expressly hold that an implied covenant of confidentiality can arise from the original contract of treatment for payment , and we find that the plaintiff's complaint here has adequately alleged the existence of an implied covenant of confidentiality.

2

* * *

> As an implied condition of that contract, this Court is of the opinion that <u>the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission.</u>
>
> * * *
>
> <u>[W]e hold that a physician breaches his or her implied onvenant of confidentiality by divulging medical information without the patient's consent through informal conversations with others.</u>
>
> * * *
>
> <u>[N]o exception permits disclosure of medical information in private conversations without the patient's consent.</u> As such, we are not inclined to find that patients or physicians typically expect that the physician's implied covenant of confidentiality contains "informal interview" exception.

75 S.W.3d at 407, 408, 409 n.12 (emphasis added).

In <u>Alsip v. Johnson City Medical Center</u>, WL1536191, (Tenn. Ct. App. Jan. 27, 2005), the Tennessee Court of Appeals addressed <u>Given</u> and the challenge that under prior Tennessee law, the filing of a legal action for recovery for medical injuries waived any claim of confidentiality of medical information.

> <u>Even if Tennessee law provided that the filing of a lawsuit involving medical issues constituted a waiver by the plaintiff of the covenant of confidentiality, we believe that this law would be preempted by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")</u> and the rules promulgated by the United States Department of Health and Human Services pursuant to HIPAA. Federal law clearly provides that the provisions of HIPAA and its related rules, where more stringent or, stated another way, more confidentiality-friendly, preempt the less stringent edicts of state law; while states can establish *greater* protections than those provided for under HIPAA, they cannot promulgate rules that provide for *less* stringent protections. 45 C.F.R. § 160.203 (2005). As explained in the case of <u>Law v. Zurkerman</u>, 307 F.Supp.2d 705, 711 (D. Md. 2004).
>
> * * *
>
> If, as argued by the defendants, the filing of a suit in Tennessee involving the

plaintiff's medical condition works a waiver as to the covenant of confidentiality.

* * *

Tennessee's less stringent provision would be preempted by HIPAA's more stringent provision.

Id. at 9, n. 11 (citing and quoting 45 C.F.R. § 160.203).[1]

As applied here, given expressly recognizes a patient's waiver of the covenant of confidentiality. Karen Travis's first two authorizations clearly waived her confidentiality covenant with any of her health care providers. There is nothing to suggest that Karen Travis's waivers were involuntary. Defendants' counsel gave Plaintiffs' counsel prior written notice of his intent to take an initial statement from Dr. Law that provided an opportunity for Plaintiffs' counsel to insist upon their presence at the time of Dr. Law's interview. Thus, the Court concludes that the Plaintiff's motion to strike should be denied.

## B. Defendants' Motion for Summary Judgment

### 1. Review of the Record

In their first motion for summary judgment, (Docket Entry No. 56) Defendants argue that their expert proof establishes that the AB-DOer is not a defective product. Plaintiffs respond with their expert that the product is defective. In their second motion for summary judgment,

---

[1]The portion of 45 C.F.R.§ 160.203 quoted by the Tennessee Court of Appeals reads as follows:

1. A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met:

(b)The provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

4

Defendants argue that Plaintiffs lack the requisite proof causation of Karen Travis's that is necessary for recovery. (Docket Entry No. 76). Plaintiffs respond that the Defendants' second motion is untimely under the Case Management Order[2]; was filed without Court approval; is a device to discovery the testimony of Plaintiff's physician whom Defendants did not depose; and lacks merit given the Plaintiffs' expert proof that the AB-DOer is defective and that Plaintiffs' expert proof is that Karen Travis's injuries were caused or aggravated by the Defendants' product that is defectively designed.

On or about August 4, 2001, Plaintiff purchased an AB-DOer, an abdominal exercise machine. (Docket Entry No. 77, Karen Travis Deposition Exhibit "A" at p.21). Approximately a month after beginning to use the AB-DOer, Plaintiff began experiencing pain. Id. pp.26 & 27. On or around October 31, 2001, Plaintiff stopped using the AB-Doer because of pain she was experiencing in her back and leg. Id. at p. 28. Plaintiff's pain was in her middle back and down her right leg. Id. at p.46.

Plaintiff was examined by Dr. Rungee of Tennessee Orthopaedics who performed a "Doppler" ultrasound test on the Plaintiff in order to determine the cause of pain in her leg. Id. at pp.47 - 48. Dr. Rungee's opinion was that "everything was fine." Id. at p.49. Thereafter, Plaintiff was treated by Dr. Melvin Douglas Law. Id. at p.62. Plaintiff stated that "[I] really liked him, and I really liked his bedside manner, and I felt comfortable with him." Id. at pp.62 & 63. Dr. Law performed back surgery on the Plaintiff in December, 2001. Id. at p.63, Attached hereto as Exhibit "A").

---

[2]In the Court's view, the proper challenge on this point is a motion to strike. Given that the Court has reviewed the motion and Plaintiffs' response, the Court addresses the substantive issues in the second motion for summary judgment.

Dr. Law who is board certified in orthopaedic surgery and is licensed in Tennessee, owns and uses the AB-DOer, and is familiar with its design and operation (Docket Entry No. 77, as Exhibit "B" thereto Law Affidavit at ¶3). As Karen Travis's treating physician, and based his review of her complaint, Plaintiffs' expert disclosures and the AB-DOer owner's manual, Dr. Law opines: "Mrs. Travis' back condition for which I operated was not caused by any improper or abnormal stress placed upon he back by the AB-DOer." Id. at ¶ 8(b).

As to the manufacture and design of the AB-DOer, the proof reflects that Thane International participated in "tweaks" that were made to the AB-DOer's packaging. Tobias Deposition, pp. 26-27. In addition, Thane International was involved in approving some of the design changes, including the location or addition of bolt holes that allowed for additional adjustment of the massage roller. Tobias Deposition, pp 33-34; Moe Deposition, pp. 16-17. Thane International was involved in testing the product, whether in-house or by the customers, and made decisions based on that testing. Moe Deposition, pp. 49-50, 53-54. Thane International participated in each level of production of the AB-DOer. Tobias Deposition p. 48.

Plaintiffs' proof includes a mechanical diagnosis expert who opines that the Ab-Doer is defectively designed in its seating design for the intended purpose of the product and that the product lacks sufficient warnings . (Docket Entry No. 24 Wasilewski Affidavit at p. 3). Dr. Paul C. Buechel, a neurologist, opines that the Defendants' product caused and/or aggravated the Plaintiff Karen Travis's back condition. (Docket Entry No. 90, Exhibit No. 4 thereto, Buechel Affidavit).

## 2. CONCLUSIONS OF LAW

In a diversity action, the district court is obliged to apply the law of the forum. Erie R.R.

Co. v. Tompkins, 304 U.S. 64 (1938). Under Tennessee law, in tort actions, a court must the law of the state with the most significant relationship to the events giving rise to the action. Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). Here, Karen Travis's injuries were sustained in Tennessee and Tennessee law applies.

Plaintiffs' claims, therefore, arise under Tennessee law, and more particularly, the Tennessee Product Liability Act of 1977 ("TPLA"), Tenn. Code Ann. §§ 29-28-101 et seq. In Higgs v. Gen. Motors Corp., 655 F. Supp. 22 (E.D. Tenn. 1985), the Honorable James H. Jarvis, District Judge, summarized the threshold requirements for all claims under the TPLA:

> Indeed, it makes no difference whether the complaint is couched in terms of negligence, strict liability for breach of warranty; it has generally been held in the state of Tennessee that <u>in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective [or] unreasonably dangerous at the time the product left the control of the manufacturer.</u>

655 F. Supp. at 23 (citation omitted and emphasis added).

Under the TPLA, a "defective condition" is one that "renders [a product] unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). Similarly, a product is "unreasonably dangerous" if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition." Tenn. Code Ann. § 29-28-102(8).

As to the Defendants' liability, any non-party who is alleged by the defendant to be the tortfeasor must be sufficiently identified so as to allow the plaintiff to file and serve process on that party. Brown v. Wal-Mart Discount Cities, 12 S.W.3d 785 (Tenn. 2000). As stated by the

Tennessee Supreme Court:

> we conclude that the defendant may not attribute fault to a nonparty who is not identified sufficiently to allow the plaintiff to plead and serve process on such person pursuant to Tenn. Code Ann.§ 20-1-119 (1994 & Supp. 1999), even if the defendant establishes the nonparty's existence by clear and convincing evidence.

Id. at 786.

If the identification is insufficient, then the defendant cannot attribute fault to the non-party. Id.. See also, Samuelson v. McMurtry, 962 S.W.2d 473, 475 (Tenn. 1998); and Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 84 (Tenn. 1996); Grandstaff v. Hawks, 36 S.W.3d 482, 495 (Tenn. Ct. App. 2000).

Defendant Thane did not sufficiently identify the non-party manufacturer in its Answer: "[t]his Defendant is not responsible . . . for any fault which may [be] [sic] attributable to unnamed third parties whose identities and act or omissions constituting fault may be developed through discovery." Answer of Thane International, Inc., p. 4, paragraph 37. Such vague references to "unnamed third parties" is insufficient to satisfy the requirements of Tennessee law. The Defendant Thane cannot attribute any fault for these injuries to a non-party.

Genuine issues of material fact exist on Defendants' liability for Plaintiff Karen Travis's injuries. Thane International placed its name on the AB-DOer manual, revised the instruction manual, and did not include the name of the manufacturer, Inventors Universe. Tobisa Deposition, pp. 21-22; Moe Deposition, pp. 9-10.

"One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts Section 400 (1964). The Tennessee Supreme Court has adopted this principle:

8

Case 3:02-cv-01030   Document 94   Filed 08/15/05   Page 8 of 10 PageID #: 189

> "In a number of cases it has been held that one who labels a product with his won name or otherwise represents it to be his won is to be treated on the same basis as if he had manufactured it, and so is liable for any negligence on the part of the actual marker." Prosser, Law of Torts, 3rdEd., Section 96. Decora, though it did not manufacture the product, labeled it with its own name and in its advertising material represented itself as being the originator and distributor.

Walker v. Decora, 471 S.W.2d 778 (Tenn. 1971).

Here, Defendant Thane, represented that it made the AB-DOer, Thane placed its name on the product and its packing materials and instructional manual, and omitted the manufacturer's name from the manual. The testimony of Elizabeth Moe and John Tobias reflect Thane's involvement with the design and development of the product beyond a mere distributorship. Thus, material factual disputes remain as to Thane's actual participation in the design, manufacture, and testing of the AB-DOer.

To establish claim under the TPLA, a plaintiff has the burden of proving proximate cause – that the "alleged defect in the product [was] the cause in fact of the injury." Wyatt v. Winnebago Indus., Inc., 566 S.W.2d 276, 280-81 (Tenn. Ct. App. 1977). Although "[t]he issue of whether a product is defective or dangerous is one for the jury," Whaley v. Rheem Mfg. Co., 900 S.W.2d 296, 300 (Tenn. Ct. App. 1995) (citation omitted), under Tennessee law, "expert testimony is required to establish liability in cases alleging manufacturing and design defects." Pride v. BIC Corp., 218 F.3d 566, 580 (6th Cir. 2000); see also Browder v. Pettigrew, 541 S.W.2d 402, 404 (Tenn. 1976); Fulton v. Pfizer Hosp. Prod. Group, Inc., 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993). Accordingly, a court must grant summary judgment where admissible expert testimony on causation and product defect is lacking. See, e.g., Coffey v. Dowley Mfg. Co., 187 F. Supp. 958, 979 (M.D. Tenn. 2002) (Nixon, J.) ("Without [their proffered expert witness], Plaintiffs cannot show a reasonable jury that this is an incident that would not occur

9

without a defect; to do that, they would need an expert witness.").

Given Plaintiffs' unchallenged expert proof that the AB-DOer is a defective product and and was the cause or a contributing cause to Karen Travis's back injury, the Court concludes that Plaintiffs have sufficient expert proof that Karen Travis's injuries were caused by the use of the AB-DOer. Thus, the Defendants' motions for summary judgment should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 11th day of August, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge

10

Case 3:02-cv-01030   Document 94   Filed 08/15/05   Page 10 of 10 PageID #: 191